# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, JANE DOE, and JOHN DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GILEAD SCIENCES, INC.,<br><br>Defendant. | Case No. 2:14-cv-06978-SD<br><br><br>CLASS ACTION<br><br><br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

Nicholas E. Chimicles
Benjamin F. Johns
Joseph B. Kenney
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
Nick@chimicles.com
BFJ@chimicles.com
JBK@chimicles.com

*Attorneys for Plaintiffs*

Gilead's Reply Memorandum ("Def. Reply") further brings into focus the reasons why its attempt to have Plaintiffs' ACA claim dismissed must fail.[1] Gilead insists that "the alleged price difference among HCV patients is based only on *unprotected* factors, in particular, ability to pay." (Def. Reply at 2) (emphasis in original). That characterization wholly misses the essence of this case and the asserted ACA claim. Gilead's pricing conduct has done much more than render its products unaffordable to a significant segment of the HCV patient population in this country. Gilead's conduct has had the unprecedented effect of causing the healthcare industry to ration Gilead's HCV drugs. Physicians are prescribing the HCV drugs for only the sickest patients. Some PBMs are removing Gilead's drugs from their formularies while other PBMs are erecting numerous hurdles to access those drugs. Public agencies, such as the Pennsylvania Department of Corrections, are delaying the dispensing of Gilead's HCV drugs entirely while they develop protocols for incarcerated HCV patients.[2]

It is not the patients' "ability to pay" that is at issue because it is insured patients, such as the Doe plaintiffs, who are suffering the denial of access to Gilead's HCV drugs. Unlike the plaintiffs in *Williams v. State Div. of State Police*, No. 10-3478, 2012 U.S. Dist. LEXIS 72457 (D.N.J. May 24, 2012), who could find alternative housing, this case is much closer factually to another ACA discrimination case, *East v. Blue Cross & Blue Shield of La.*, No. 14-115, 2014 U.S. Dist. LEXIS 23916 (M.D. La. Feb. 24, 2014), where, as Gilead acknowledges, the defendant

---

[1] Plaintiffs have addressed Gilead's arguments related to patent preemption and the merits of their state law claims in their opposition brief and, as such, do not reiterate those points here. *See* DE # 18, at 35-52 (the "MTD Opp.").

[2] Gilead criticizes the compendium of articles attached to Plaintiffs' MTD Opp. Such materials are properly submitted to provide background information to the Court on the ever-changing landscape regarding the effects of Gilead's conduct. Moreover, the Court may take judicial notice of such materials. *See In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 483 F. Supp. 2d 407, 420 n.3 (D.N.J. 2007) ("The Court may take judicial notice of public material such as newspaper articles and analyst reports . . . even though the materials are extraneous to the Complaint." (citing *Benak v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)).

insurer's conduct was driven by "the apparent hope of driving (costly) disabled people from the plan." (Def. Reply at 3). Similarly, here Gilead's conduct is effectively denying access to its HCV drugs to significant segments of the American HCV patient population, an entirely predictable result given the virtually immediate and widespread reaction and outcry from the healthcare industry, regulators and the media after Sovaldi was first marketed in late 2013.

Gilead also attempts to manufacture an inconsistency in Plaintiffs' brief by pointing out that Plaintiffs do not seek to have the Court "set prices," but they envision using expert testimony and pricing data in determining damages. Gilead's contention that this "would be a radical departure from existing law" misses the mark.[3] (Def. Reply at 1). Plaintiffs are entitled to compensatory damages under both Title VI and Section 504. *See A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (noting remedies under Section 504 and Title VI as "coextensive" and "include compensatory damages"). Compensatory damages, in turn, "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *Cortez v. Trans Union*, LLC, 617 F.3d 688, 718 (3d Cir. 2010). As Plaintiffs have explained in their opening brief, courts routinely assess compensatory damages (in a wide variety of contexts) by determining the difference between the actual prices charged and the price that would have been charged but for the allegedly wrongful conduct. *See* MTD Opp. at 30-31 (collecting cases). In any event, Gilead's attempt to shift the Court's attention to the damages methodology is premature and is no reason to dismiss Plaintiffs' claims on their merits.

Gilead's attempt to distinguish the two recent ACA decisions relied on by Plaintiffs is also unpersuasive. While Gilead is correct that there are other parts of the ACA that relate to the

---

[3] *See* Def. Reply at 1 n.2.

use of "specialized anti-discrimination language" by insurance companies,[4] the district court's TRO decision in *East* was analyzing the same ACA anti-discrimination section asserted by Plaintiffs here. *East*, 2014 U.S. Dist. LEXIS 23916, at *7 (citing 42 U.S.C. § 18116). Gilead's attempt to further distinguish *East* on the ground that the plaintiff there "did not demand that the defendant change its pricing" is unavailing.[5] At bottom, both the *East* plaintiff and Plaintiffs here challenge the same thing: conduct that effectively prevents members of a protected class from obtaining much needed prescription drugs. As Plaintiffs have explained, *East* supports the view that this type of pricing discrimination violates the ACA. It is also telling that the passing mention to *Rumble v. Fairview Health Serv.* in Gilead's Reply does not address the language from that case which confirms that an ACA claim may be based on the denial of medical benefits or the exclusion from participating in certain health programs – in addition to discrimination. *See* Pltf. Mem. at 26 (the ACA "simply requires that the plaintiff demonstrate that he was denied the benefits of a health program or activity, or discriminated against.") (quoting *Rumble v. Fairview Health Serv* No. 14-2037, 2015 U.S. Dist. LEXIS 31591, at *45 (D. Minn. Mar. 16, 2015)). Gilead cannot credibly argue that Plaintiffs and other HCV infected people are *not* being denied the benefits of these needed drugs due to its pricing practices.

Finally, Gilead's brief states that discrimination on a "disparate impact" theory does not satisfy the intentional discrimination standard. (Def. Reply at 3-4). Gilead is correct on this point, but overlooks that Plaintiffs are arguing intentional discrimination based on deliberate indifference and not on disparate impact. *See* Pltf. Mem. at 32-33 ("Plaintiffs have pleaded facts sufficient to establish Gilead's deliberate indifference."). Plaintiffs cited a handful of Third

---

[4] Def. Reply at 3, n.5. Gilead has not disputed that it is covered by the ACA's antidiscrimination provision. *See* MTD Opp. at 16, n.9.
[5] Def. Reply at 3.

Circuit cases that establish they can satisfy Title VI's intentional discrimination standard through deliberate indifference. *See, e.g.*, *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 272 (3d Cir. 2014) ("Given the parallels between Title VI and the [ADA and RA], our rationale for adopting deliberate indifference as a form of intentional discrimination . . . applies with equal force in the Title VI context."). As such, Gilead is incorrect that Plaintiffs' brief failed to establish intentional discrimination.

Gilead's attack on the merits of this claim is likewise unavailing. (Def. Reply at 4-5). Plaintiffs do in fact allege that Gilead's conduct adversely affected racial minorities compared to non-minorities. FAC ¶ 133 (noting the disproportionate number of minorities infected with HCV). *See also,* MTD Opp. at 33 ("Here, Plaintiffs have established that Gilead knew that Hepatitis C victims are disproportionately African Americans, knew of the impact its pricing practices had on racial minorities, that it made a deliberate choice to price Sovaldi and Harvoni in a manner that would negatively impact racial minorities' access to those drugs, and that Gilead . . . had the power to correct its misconduct, but failed to do so.").[6] Aside from being unpersuasive, Gilead's attempt to challenge these statistics – for the first time in its Reply brief – is procedurally premature and should not be resolved in connection with a motion to dismiss. *Guerra v. GMAC LLC*, No. 2:08-01297, 2009 U.S. Dist. LEXIS 13776, at *19-20 (E.D. Pa. Feb. 20, 2009) (observing, in a case where the validity of data related to the likelihood of different demographics to be put into high cost loans was questioned, that "the validity of the statistical evidence is a question of fact better suited to summary judgment").

---

[6] Plaintiffs' class definition also includes "[a]ll persons," which includes African Americans who are protected by the Title VI of the Civil Rights Act of 1964. FAC ¶ 117. To the extent the Court grants Def's MTD on the ground that the Doe Plaintiffs lack standing for failure to allege they are African American, such a dismissal should be without prejudice to allow a suitable replacement plaintiff to be included.

For the foregoing reasons, as well as those set forth in Plaintiffs' initial opposition brief, Gilead's motion to dismiss should be denied.

Dated: March 31, 2015

Respectfully submitted,

By: */s/ Nicholas E. Chimicles*
Nicholas E. Chimicles
Benjamin F. Johns
Joseph B. Kenney
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
Nick@chimicles.com
BFJ@chimicles.com
JBK@chimicles.com

***Attorneys for Plaintiffs and the Class***